JS 44   (Rev. 06/17)

**MMB**

**CIVIL COVER SHEET**

18-CV-2279

18   2279

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOHN ALBERICI, Individually and On Behalf of All Others Similarly Situated

**(b)** County of Residence of First Listed Plaintiff   **Chester County, PA**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

KASKELA LAW LLC
201 King of Prussia Road, Suite 650, Radnor, PA 19087; (484) 258 - 1585

## DEFENDANTS

RECRO PHARMA, INC., GERALDINE A. HENWOOD, RYAN D. LAKE and MICHAEL CELANO

County of Residence of First Listed Defendant   **Chester County, PA**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
15 U.S.C. §§ 78j(b) and 78t(a)

Brief description of cause:
Violation of the federal securities laws

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

MAY 31 2018

DATE
May 31, 2018

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

**MMB**   **UNITED STATES DISTRICT COURT**   18   2279

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: KASKELA LAW LLC, 201 KING OF PRUSSIA RD, SUITE 650, RADNOR, PA 19087

Address of Defendant: RECRO PHARMA, INC, 490 LAPP RD, MALVERN, PA 19355

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☐

Does this case involve multidistrict litigation possibilities?   Yes☐   No☐

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☒ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, D. SEAMUS KASKELA, counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 5/31/2018   _____   204351
                   Attorney-at-Law      Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.   MAY 31 2018

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/31/2018   _____   204351
                   Attorney-at-Law      Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

ALBERICI

v.

Receo Pharma, Inc., et al.

:
:
:
:

CIVIL ACTION

NO. **18    2279**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)    (⊗)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( )

| 5/31/2018 | D. SEAMUS KASKELA | PLAINTIFF |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 484  258.1585 | 484  258.1585 | SKASKELA@KASKELALAW.COM |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAY 31 2018

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN ALBERICI, Individually and On Behalf of All Others Similarly Situated,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>RECRO PHARMA, INC., GERALDINE A. HENWOOD, RYAN D. LAKE, AND MICHAEL CELANO,  )<br><br>Defendants.  ) | Case No.   18   2279<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED**<br><br>FILED<br>MAY 3 1 2018<br>By KATE BARKMAN, Clerk<br>Dep. Clerk |

**CLASS ACTION COMPLAINT**

Plaintiff John Alberici ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Recro Pharma, Inc. ("Recro" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Recro securities between July 31,

1



2017 through May 23, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Recro is a specialty pharmaceutical company that develops non-opioid therapeutics for the treatment of pain in the post-operative setting. Recro offers its products to the medical industry. The Company's lead product is a proprietary injectable form of meloxicam, a long-acting preferential COX-2 inhibitor ("IV meloxicam") to be used for the management of moderate to severe pain.

3.      Founded in 2007, Recro is headquartered in Malvern, Pennsylvania, and its securities trade on the NASDAQ Capital Market ("NASDAQ") under the ticker symbol "REPH."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) IV Meloxicam lacked supporting clinical data to show sufficient clinical benefits to receive U.S. Food and Drug Administration ("FDA") approval; and (ii) as a result, Recro's public statements were materially false and misleading at all relevant times.

5.      On May 24, 2018, Recro announced that the FDA had declined to approve Recro's New Drug Application ("NDA") for IV meloxicam. In its Complete Response Letter, the FDA stated that the drug's analgesic effects did not meet FDA expectations and raised questions related to chemistry, manufacturing and controls data.

6.      On this news, Recro's share price fell $6.79, or 54.67%, to close at $5.63 on May 24, 2018.

2

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Recro's principal executive offices are located within this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Recro's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Recro is incorporated in Pennsylvania, with principal executive offices located at 490 Lapp Road, Malvern, Pennsylvania 19355. Recro's securities trade on the NASDAQ under the ticker symbol "REPH."

14.     Defendant Geraldine A. Henwood ("Henwood") has served as the Company's Chief Executive Officer ("CEO"), President and Director since 2008.

15.     Defendant Ryan D. Lake ("Lake") has served as the Company's Chief Financial Officer ("CFO") since January 2018, and served as its Senior Vice President of Finance and Chief Accounting Officer from June 6, 2017 to January 2018.

16.     Defendant Michael Celano ("Celano") served as the Company's CFO from July 2016 to January 2018, and has served as its Chief Operating Officer ("COO") since January 2018.

17.     The Defendants referenced above in ¶¶ 14-16 are sometimes referred to herein as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of Recro's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

4

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Recro is a specialty pharmaceutical company that develops non-opioid therapeutics

for the treatment of pain in the post-operative setting. Recro offers its products to the medical

industry.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on July 31, 2017, when Recro issued a press release

entitled "Recro Pharma Submits New Drug Application for IV Meloxicam 30mg."  The press

release stated, in relevant part:

> MALVERN, Pa., July 31, 2017 (GLOBE NEWSWIRE) -- Recro Pharma, Inc.
> (Nasdaq:REPH), a revenue generating specialty pharmaceutical company focused
> on therapeutics for hospital and other acute care settings, today announced it has
> submitted a New Drug Application (NDA) to the U.S. Food and Drug
> Administration (FDA) for its lead investigational product candidate intravenous
> (IV) meloxicam 30mg for the treatment of moderate to severe, acute postoperative
> pain.
>
> The IV meloxicam 30mg NDA is supported by positive results from two pivotal
> Phase III clinical efficacy trials in patients following bunionectomy and
> abdominoplasty surgeries, a large double-blind Phase III safety trial and four Phase
> II clinical trials for the management of moderate to severe postoperative pain,
> among others.  In the first Phase III efficacy trial, IV meloxicam 30mg achieved
> the primary endpoint of a statistically significant difference in Summed Pain
> Intensity Difference (SPID) over the first 48 hours (SPID48) compared to placebo
> in patients following bunionectomy surgery, a representative hard tissue model.  In
> the second Phase III efficacy, trial IV meloxicam 30mg achieved the primary
> endpoint of a statistically significant difference in SPID over the first 24 hours
> (SPID24) compared to placebo in patients following abdominoplasty surgery, a
> representative soft tissue model.  In the pivotal safety study, the largest Phase III
> double-blind, placebo-controlled non-opioid trial to evaluate the safety of an IV
> pain product candidate in a postoperative setting, IV meloxicam 30mg was well
> tolerated and demonstrated a solid safety and tolerability profile.

21.     On August 11, 2017, Recro filed a Quarterly Report on Form 10-Q with the SEC,

announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the

"Q2 2017 10-Q").  The Q2 2017 10-Q contained signed certifications pursuant to the Sarbanes-

Oxley Act of 2002 ("SOX") by Defendants Henwood, Celano and Lake, stating that the Q2 2017

10-Q "does not contain any untrue statement of a material fact or omit to state a material fact

necessary to make the statements made, in light of the circumstances under which such statements

were made, not misleading with respect to the period covered by this report."

22.     In the Q2 2017 10-Q, the Company stated in relevant part:

> Our Acute Care segment is primarily focused on developing innovative products
> for commercialization in hospital and other acute care settings. Our lead product
> candidate, IV meloxicam, has successfully completed two pivotal Phase III clinical
> trials, a large Phase III safety trial and other safety studies for the management of
> moderate to severe pain. Overall, we enrolled a total of approximately 1,100
> patients in our Phase III program. At the end of July 2017, we submitted an NDA
> to the FDA for IV meloxicam 30mg for the management of moderate to severe
> pain. The FDA has a 60-day filing review period to determine whether the NDA is
> complete and acceptable for filing. Our Acute Care segment has no revenue and
> our costs consist primarily of expenses incurred in conducting our clinical trials and
> preclinical studies, manufacturing scale-up, regulatory activities, initial pre-
> commercialization of meloxicam and personnel costs.

23.     On September 29, 2017, Recro issued a press release entitled "Recro Pharma

Announces FDA Acceptance for Review of New Drug Application for IV Meloxicam 30mg." The

press release stated, in relevant part:

> MALVERN, Pa., Sept. 28, 2017 (GLOBE NEWSWIRE) -- Recro Pharma, Inc.
> (Nasdaq:REPH), a revenue generating specialty pharmaceutical company focused
> on therapeutics for hospital and other acute care settings, today announced that the
> U.S. Food and Drug Administration (FDA) has accepted for review its New Drug
> Application (NDA) for intravenous (IV) meloxicam 30mg for the management of
> moderate to severe pain.

> "The acceptance for review of the IV meloxicam 30mg NDA marks an important
> milestone in our effort to bring new therapeutics to patients and to the physicians
> who treat them," said Gerri Henwood, President and Chief Executive Officer of
> Recro Pharma.

24.     On October 10, 2017, Recro issued a press release entitled "Recro Pharma Presents

Phase III IV Meloxicam Clinical Efficacy Data in Patients Following Abdominoplasty at the 2017

American Society of Plastic Surgeons Annual Meeting". The press release stated, in relevant part:

6

MALVERN, Pa., Oct. 10, 2017 (GLOBE NEWSWIRE) -- Recro Pharma, Inc. (Nasdaq:REPH), a revenue generating specialty pharmaceutical company focused on therapeutics for hospital and other acute care settings, today announced an oral presentation highlighting clinical efficacy data from its Phase III study evaluating intravenous (IV) meloxicam 30mg for the treatment of acute postoperative pain in patients following abdominoplasty surgery. The poster was presented at Plastic Surgery The Meeting 2017, hosted by the American Society of Plastic Surgeons (ASPS), taking place October 6-10, 2017, in Orlando, FL. The poster, which was selected as a "Top 6" of the meeting, describes the clinical performance of IV meloxicam 30mg, including achievement of the study's primary endpoint, a statistically significant difference in Summed Pain Intensity Difference (SPID) over the first 24 hours (SPID24) compared to placebo, along with detailed secondary endpoints.

"***The Phase III results presented this year at Plastic Surgery The Meeting demonstrate the efficacy of IV meloxicam 30mg, including significant reductions in pain, as evidenced by SPID24, meaningful reductions in opioid rescue use and improvements across numerous other pain relief metrics***," said Stewart McCallum, M.D., F.A.C.S., Chief Medical Officer of Recro Pharma and co-author of the poster. "***On the safety front, IV meloxicam 30mg continues to demonstrate a favorable safety and tolerability profile with a low incidence of adverse events (AEs), serious AEs and infusion events. We believe these results demonstrate IV meloxicam 30mg's ability to provide rapid and durable pain relief following abdominoplasty surgery and support its potential to be an attractive non-opioid alternative for physicians and patients for the treatment of acute, postoperative pain***."

IV meloxicam 30mg has successfully completed three Phase III trials, including two Phase III efficacy trials and one Phase III safety trial. The results from these studies, as well as results from four Phase II trials and other safety studies, comprised the NDA package for IV meloxicam 30mg that was accepted for review by the U.S. Food and Drug Administration in September 2017.

(Emphases added.)

25. On November 9, 2017, Recro filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 10-Q"). The Q3 2017 10-Q contained signed certifications pursuant to SOX by Defendants Henwood, Celano and Lake, stating that the Q3 2017 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements

7

made, in light of the circumstances under which such statements were made, not misleading with

respect to the period covered by this report."

26.     In Q3 2017 10-Q, the Company stated in relevant part:

Our Acute Care segment is primarily focused on developing innovative products for commercialization in hospital and other acute care settings. Our lead product candidate, IV meloxicam, has successfully completed two pivotal Phase III clinical trials, a large Phase III safety trial and other safety studies for the management of moderate to severe pain. Overall, we enrolled a total of approximately 1,100 patients in our Phase III program. At the end of July 2017, we submitted an NDA to the FDA for IV meloxicam 30mg for the management of moderate to severe pain. The FDA has accepted the NDA for review and set a PDUFA date of May 26, 2018. Our Acute Care segment has no revenue and our costs consist primarily of expenses incurred in conducting our clinical trials and preclinical studies, manufacturing scale-up, regulatory activities, initial pre-commercialization of meloxicam and personnel costs.

27.     On February 20, 2018, Recro issued a press release entitled "Recro Pharma

Announces Publication of Supportive Phase II IV Meloxicam Bunionectomy Data in the Journal

of Pain Research".  The press release stated, in relevant part:

MALVERN, Pa., Feb. 20, 2018 (GLOBE NEWSWIRE) -- Recro Pharma, Inc. (Nasdaq:REPH), a revenue generating specialty pharmaceutical company focused on therapeutics for the hospital and other acute care settings, today announced the publication of previously reported Phase II clinical data for intravenous (IV) meloxicam for the treatment of pain following bunionectomy surgery. The article, titled "Evaluation of the safety and efficacy of an intravenous nanocrystal formulation of meloxicam in the management of moderate-to-severe pain after bunionectomy," was published online in the Journal of Pain Research.

"Moderate to severe pain is common following bunionectomy, particularly in the first few days after surgery," said Stewart McCallum, MD, Chief Medical Officer of Recro Pharma. "Selection of effective pain control strategies for these patients is generally guided by the intensity of the pain, the duration of analgesia provided and the associated risks and benefits of the particular therapy. Although opioids have traditionally been the mainstay of postoperative pain management, opioid related adverse events, together with the possibility of long-term dependence, have created a need for effective non-opioid analgesics. *The data from this Phase 2 study support the growing body of clinical evidence demonstrating that IV meloxicam acts rapidly and offers durable pain relief, with a favorable safety profile. We believe IV meloxicam 30mg, for which we are awaiting a May 2018 approval decision from the U.S. Food and Drug Administration, has the potential*

8

***to play a meaningfully differentiated role in the management of moderate to severe, postoperative pain***."

(Emphasis added.)

28.     On March 2, 2018, Recro filed an Annual Report on Form 10-K with the SEC,

announcing the Company's financial and operating results for the quarter ended December 31,

2017 (the "2017 10-K").   The 2017 10-K contained signed certifications pursuant to SOX by

Defendants Henwood, Celano and Lake, stating that the 2017 10-K "does not contain any untrue

statement of a material fact or omit to state a material fact necessary to make the statements made,

in light of the circumstances under which such statements were made, not misleading with respect

to the period covered by this report."

29.     In the 2017 10-K, the Company stated in relevant part:

Our Acute Care division is primarily focused on developing and commercializing innovative products for hospital and related acute care settings. Our lead product candidate is a proprietary injectable form of meloxicam, a long-acting preferential COX-2 inhibitor. IV meloxicam has successfully completed three Phase III clinical trials, including two pivotal efficacy trials, a large double-blind Phase III safety trial and other safety studies for the management of moderate to severe pain. Overall, the total new drug application, or NDA, program included over 1,400 patients. In late July 2017, we submitted a NDA to the Food and Drug Administration, or FDA, for IV meloxicam 30mg for the management of moderate to severe pain. The FDA has accepted the NDA for review and set a date for decision on the NDA under the Prescription Drug User Fee Act, or PDUFA, of May 26, 2018. We believe that IV meloxicam compares favorably to competitive therapies in onset of pain relief, duration of pain relief, extent of pain relief and time to peak analgesic effect as well as that it has been well tolerated. We believe injectable meloxicam, as a non-opioid product, will overcome many of the issues associated with commonly prescribed opioid therapeutics, including respiratory depression, excessive nausea and vomiting, constipation, as well having no addiction potential while maintaining analgesic, or pain relieving, effects. We are pursuing a Section 505(b)(2) regulatory strategy for IV meloxicam.

30.     On March 27, 2018, Recro issued a press release entitled "Recro Pharma

Announces Publication of Phase III IV Meloxicam Bunionectomy Data in the Clinical Journal of

Pain".  The press release stated, in relevant part:

MALVERN, Pa., March 27, 2018 (GLOBE NEWSWIRE) -- Recro Pharma, Inc. (Nasdaq:REPH), a revenue generating specialty pharmaceutical company focused on therapeutics for the hospital and other acute care settings, today announced the publication of Phase III clinical data for intravenous (IV) meloxicam for the treatment of pain following bunionectomy surgery. The article, titled "Efficacy and Safety of Intravenous Meloxicam in Subjects with Moderate-to-Severe Pain Following Bunionectomy," was published online in the Clinical Journal of Pain.

*"As previously reported, the data from this Phase III trial demonstrate that IV meloxicam provides rapid and sustained pain relief following bunionectomy surgery, a favorable safety and tolerability profile, and a significant opioid-sparing effect,"* said Stewart McCallum, M.D., Chief Medical Officer of Recro Pharma. "An urgent, unmet medical need for non-opioid agents for the management of moderate to severe pain persists for patients and physicians. The New Drug Application for IV meloxicam is currently under review with the U.S. Food and Drug Administration with a target PDUFA date of May 26, 2018. If approved, IV meloxicam will be the first 24-hour duration, non-opioid, IV analgesic for moderate to severe pain."

(Emphasis added.)

31.    On May 9, 2018, Recro filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2018 (the "Q1 2018 10-Q").  The Q1 2018 10-Q contained signed certifications pursuant to SOX by Defendants Henwood and Lake, stating that the Q1 2018 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

32.    In the Q1 2018 10-Q, the Company stated in relevant part:

Our Acute Care segment is primarily focused on developing and commercializing innovative products for hospital and related acute care settings. Our lead product candidate is a proprietary injectable form of meloxicam, a long-acting preferential COX-2 inhibitor. IV meloxicam has successfully completed three Phase III clinical trials for the management of moderate to severe pain, consisting of two pivotal efficacy trials and a large double-blind Phase III safety trial, as well as other safety studies. Overall, the total new drug application, or NDA, program included over 1,400 patients. In late July 2017, we submitted a NDA to the U.S. Food and Drug Administration, or FDA, for IV meloxicam 30mg for the management of moderate

10

to severe pain. The FDA has accepted the NDA for review and set a date for decision on the NDA under the Prescription Drug User Fee Act, or PDUFA, of May 26, 2018. Our Acute Care segment has no revenue and our costs consist primarily of expenses incurred in conducting our clinical trials and preclinical studies, manufacturing scale-up, regulatory activities, pre-commercialization of meloxicam and personnel costs.

33.     On May 9, 2018, the Company held an earnings call with analysts to discuss its Q1

2018 results. During the call, a Recro executive discussed its lead product, IV meloxicam, stating

in relevant part:

> Given the increasing urgency of the national opioid crisis, we believe IV meloxicam has to potential to serve as a valuable analgesic alternative for healthcare institutions, physicians and patients.

> We believe, we've identified clear addressable segments of the market, that will benefit from IV meloxicam's profile. Segments in which we believe, IV meloxicam's profile provides both clinical and economic value. From a clinical standpoint, we believe IV meloxicam can effectively treat pain, while reducing opioid consumption, which reduced opioid related adverse events.

> From an economic standpoint, we believe IV meloxicam's durable 24-hour dosing profile will allow ambulatory surgical centers to perform more complex procedures with same date discharge, while managing pain. And hospitals to accelerate patients discharge and reduce length of stay through reduction of opioids.

34.     The statements referenced in ¶¶ 20-33 were materially false and misleading because

Defendants made false and/or misleading statements, as well as failed to disclose material adverse

facts about the Company's business, operational and compliance policies. Specifically, Defendants

made false and/or misleading statements and/or failed to disclose that: (i) IV Meloxicam lacked

supporting clinical data to show sufficient clinical benefits to receive FDA approval; and (ii) as a

result, Recro's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

35.     On May 24, 2018, Recro issued a press release entitled "Recro Pharma Receives

Complete Response Letter from the FDA," disclosing that the FDA had declined to approve

11

Recro's New Drug Application for the non-opioid pain relief treatment IV meloxicam. In the press release, the Company stated in relevant part:

> **MALVERN, PA, May 24, 2018** – Recro Pharma, Inc. (Nasdaq: REPH), a revenue generating specialty pharmaceutical company focused on therapeutics for the hospital and other acute care settings, today announced it has received a Complete Response Letter (CRL) from the U.S. Food and Drug Administration (FDA) Office of Drug Evaluation II regarding the New Drug Application (NDA) for IV meloxicam.
>
> The CRL stated that although the outcome of the pivotal phase III trials demonstrated statistically significant outcomes on the primary endpoints, the FDA is unable to approve the application in its current form. *The CRL states that data from ad hoc analyses and selective secondary endpoints suggest that the analgesic effect does not meet the expectations of the FDA. In addition, the CRL raised CMC related questions on extractable and leachable data provided in the NDA.*

(Emphasis added.)

36.     On this news, Recro's share price fell $6.79, or 54.67%, to close at $5.63 on May 24, 2018.

37.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Recro securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Recro securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Recro or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Recro;

- whether the Individual Defendants caused Recro to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

13

- whether the prices of Recro securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

44.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Recro securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Recro securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Recro securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Recro securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

15

50.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Recro securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Recro's finances and business prospects.

51.     By virtue of their positions at Recro , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Recro, the Individual Defendants had knowledge of the details of Recro's internal affairs.

53.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

16

Recro. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Recro's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Recro securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Recro's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Recro securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

54.     During the Class Period, Recro securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Recro securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Recro securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Recro securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

55.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

57.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     During the Class Period, the Individual Defendants participated in the operation and management of Recro, and conducted and participated, directly and indirectly, in the conduct of Recro's business affairs.  Because of their senior positions, they knew the adverse non-public information about Recro's misstatement of income and expenses and false financial statements.

59.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Recro's financial condition and results of operations, and to correct promptly any public statements issued by Recro which had become materially false or misleading.

60.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Recro disseminated in the marketplace during the Class Period concerning Recro's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Recro to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Recro within the meaning of

Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Recro securities.

61.    Each of the Individual Defendants, therefore, acted as a controlling person of Recro. By reason of their senior management positions and/or being directors of Recro, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Recro to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Recro and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

62.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Recro.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 31, 2018

Respectfully submitted,

**KASKELA LAW LLC**
D. Seamus Kaskela (PA Bar No. 204351)
201 King of Prussia Road, Suite 650
Radnor, Pennsylvania 19087
Telephone:  (484) 258 – 1585
Facsimile:  (484) 258 – 1585
Email:  skaskela@kaskelalaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
            ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, John Alberici, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Recro Pharma, Inc. ("Recro" or the "Company") and authorize its filing on my behalf.

3.      I did not purchase or acquire Recro securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Recro securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet lists all of my transactions in Recro securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Date: May  30 , 2018

John Alberici

**RECRO PHARMA, INC. (REPH)**                                             **Alberici, John**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 3/14/2018 | Purchase | 2,000 | $10.9100 |
| 5/15/2018 | Purchase | 2,000 | $11.1400 |