**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN ALBERICI, Individually and On Behalf of All Others Similarly Situated, | ) Case No. 2:18-cv-02279-MMB<br>)<br>) <u>CLASS ACTION</u> |
| Plaintiff, | ) |
| v. | )<br>) Hon. Michael M. Baylson |
| RECRO PHARMA, INC., GERALDINE A. HENWOOD, STEWART MCCALLUM AND JOHN HARLOW, | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ..................................................................................1

II.    PROCEDURAL HISTORY OF THE LITIGATION ..........................................................3

III.   THE SETTLEMENT TERMS...................................................................................5

IV.    THE SETTLEMENT RESULTED FROM ARM'S-LENGTH SETTLEMENT
       NEGOTIATIONS ...................................................................................................7

V.     FRAMEWORK FOR CLASS ACTION SETTLEMENTS ..................................................8

VI.    PRELIMINARY APPROVAL IS WARRANTED ............................................................9

       A.     The Proposed Settlement Is Fair ..........................................................10

       B.     The Benefits Under the Settlement Are More Than Adequate ..............13

       C.     The Other Rule 23(e)(2)(C) Factors Are Met ......................................16

              1.     The Proposed Method for Distributing Relief Is Effective.......16

              2.     Attorneys' Fees and Expenses .................................................17

              3.     The Parties Have No Other Agreements Besides an Agreement to
                     Address Requests for Exclusion ..............................................18

              4.     Settlement Class Members Are Treated Equitably....................18

VII.   THE COURT SHOULD MAKE A PRELIMINARY DETERMINATION ON
       CLASS CERTIFICATION......................................................................................19

       A.     Numerosity.............................................................................................20

       B.     Commonality..........................................................................................20

       C.     Typicality...............................................................................................21

       D.     Adequacy ...............................................................................................21

              1.     Adequacy of the Proposed Class Representatives ....................22

              2.     Rule 23(g) Adequacy of the Proposed Class Counsel .............22

       E.     Common Questions Predominate and the Class Is Superior to Other
              Methods of Adjudication .......................................................................23

VIII.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS ........................................................................................................25

IX.      PROPOSED SCHEDULE OF EVENTS ..........................................................................27

X.       CONCLUSION ..................................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................................11, 22

*Alves v. Main*,
  No. 01-789 (DMC), 2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F.
  App'x 151 (3d Cir. 2014).............................................................................................12

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001).........................................................................15

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................19, 24

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994).............................................................................................20

*Bredbenner v. Liberty Travel, Inc.*,
  No. 09-905 (MF), 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .................................13

*Byrd v. Aaron's Inc.*,
  784 F.3d 154 (3d Cir. 2015).........................................................................................25

*In re CIGNA Corp. Sec. Litig.*,
  No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ..........................8, 13, 15

*In re Cigna Corp Sec. Litig.*,
  No. CIV.A. 02-8088, 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) ......................20

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
  333 F.R.D. 364 (E.D. Pa. 2019)...................................................................................24

*Curiale v. Lenox Grp., Inc.*,
  No. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ....................................8

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008)...................................................................................20

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010).........................................................................................8

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)...........................................................................................21

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ................................................................................. *passim*

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3d Cir. 1992) ................................................................................. 21

*Huffman v. Prudential Ins. Co. of Am.*,
No. 2:10-cv-05135, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ..................... 10, 16

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................... 15

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012) ........................................................................... 10, 14

*Jones v. Com. Bancorp, Inc.*,
No. 05-5600 (RBK), 2007 WL 2085357 (D.N.J. July 16, 2007) ......................... 9

*Kanefsky v. Honeywell International Inc.*,
No. 18-CV-15536 (WJM), 2022 WL 1320827 (D.N.J. May 3, 2022) .............. 11, 22

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
No. CIV.A. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ............. 17

*Nafar v. Hollywood Tanning Sys., Inc.*,
No. CIV.A.06-CV-3826 DMC, 2008 WL 3821776 (D.N.J. Aug. 12, 2008) ......... 22

*In re Nat. Football League Players Concussion Inj. Litig.*,
775 F.3d 570 (3d Cir. 2014) ................................................................................. 19

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016) ............... 12

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ................................................................................. 21

*In re Par Pharm. Sec. Litig.*,
No. 06-3226 (ES), 2013 WL 3930091 (D.N.J. July 29, 2013) ........................ 14, 15

*In re: Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom. In re
Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ................................................... 11, 22

*In re Philips/Magnavox Television Litig.*,
No. 09-3072(CCC), 2012 WL 1677244 (D.N.J. May 14, 2012) ......................... 12

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. CIV.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ..................... 17

*Ridley v. MRS BPO, LLC*,
  No. CV 18-12696 (NLH/JS), 2019 WL 6888532 (D.N.J. Dec. 18, 2019) ............................24

*Rodriguez v. Nat'l City Bank*,
  726 F.3d 372 (3d Cir. 2013)........................................................................................................24

*Sanders v. CJS Sols. Grp., LLC*,
  No. 17 Civ. 3809 (ER), 2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) .................................13

*In re Schering-Plough/Merck Merger Litig.*,
  No. 09-CV-1099 (DMC), 2010 WL 1257722 (D.N.J. Mar. 26, 2010)..........................10, 12

*Smith v. Suprema Specialties, Inc.*,
  No. CIV. 02-168 (WHW), 2007 WL 1217980 (D.N.J. Apr. 23, 2007).................................23

*Steele v. Welch*,
  No. 03-942, 2005 WL 3801469 (E.D. Pa. May 20, 2005)................................................13, 17

*Steinberg v. Nationwide Mut. Ins. Co.*,
  224 F.R.D. 67 (E.D.N.Y. 2004) ..........................................................................................11, 23

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001)........................................................................................................20

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011)........................................................................................................20

*In re Viropharma Inc. Sec. Litig.*,
  No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)....................................11, 12, 15, 17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)......................................................................................................................20

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)................................................................................8, 10, 12, 18

*Weisfeld v. Sun Chem. Corp.*,
  210 F.R.D. 136 (D.N.J. 2002), *aff'd sub nom. Wiesfeld v. Sun Chem. Corp.*, 84
  F. App'x 257 (3d Cir. 2004) .......................................................................................................23

**Statutes**

Private Securities Litigation Reform Act of 1995 ...........................................................3, 6, 17, 26

Securities Exchange Act of 1934 ..............................................................................................3, 4

**Rules and Regulations**

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Treasury Regulation §1.468B-1 ...................................................................................................6

**Other Authorities**

*Manual for Complex Litigation*, §21.63 (4th ed. 2004)...............................................................8, 27

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at
    528 (1986)...................................................................................................................................23

Lead Plaintiff the Recro Investor Group ("Lead Plaintiff" or "Plaintiff")[1] respectfully submits this Memorandum of Law in Support of its Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.   PRELIMINARY STATEMENT

A settlement has been reached in this matter following extensive, hard-fought litigation and arm's-length mediation and settlement discussions overseen by the Jed Melnick of JAMS ADR, a highly respected and experienced mediator.  As set forth in the Stipulation, the Settlement provides for the payment of $1,400,000.00 in cash to resolve this securities class action against Defendants.  This represents an excellent recovery for the Settlement Class.

This securities class action arises out of Defendants' allegedly fraudulent and misleading statements that "misled investors regarding the KOLs' concerns."[2]  This Action alleges that when the truth was revealed, the price of Recro's stock fell substantially, causing significant economic harm to Plaintiff and the Settlement Class.

The Settling Parties (as defined in the Stipulation, ¶1.39) were well informed of the strengths and weaknesses of their claims and defenses as they negotiated the Settlement.  Notably, they had the benefit of this Court's ruling on Defendants' motion to dismiss the Second Amended Complaint, as well as extensive briefing regarding Plaintiff's motion for class certification. Further, the Settling Parties had the benefit of the investigation and discovery conducted to date, including a review and analysis of over a hundred thousand pages of documents produced by

---

[1]     Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation") attached as Exhibit 1 to the Declaration of Brenda Szydlo in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Szydlo Decl.").  All internal citations are omitted and emphasis is added, unless otherwise indicated.

[2]     Memorandum denying Defendants' motion to dismiss (ECF No. 59) at 6.

Defendants, experts and third parties, expert reports concerning market efficiency, damages, and FDA issues, and the depositions of Key Opinion Leaders, a former Recro employee, expert witnesses, and members of the Recro Investor Group.

Lead Plaintiff respectfully requests that the Court (1) preliminarily certify the Settlement Class; (2) preliminarily approve the proposed Settlement; (3) hold that the manner and forms of notice set forth in the Preliminary Approval Order satisfy due process and provide the best notice practicable under the circumstances; (4) schedule the Settlement Hearing; (5) appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel; (6) appoint Strategic Claims Services as the Claims Administrator; and (7) order that Notice substantially in the forms of the proposed notices be sent to the proposed Settlement Class. Pursuant to the terms of the Stipulation and Federal Rule of Civil Procedure ("Rule") 23(c)(2)(B)(v), all members of the Settlement Class will have an opportunity to opt out or object.

At this first stage of the settlement approval process, courts are to evaluate whether they are likely to be able to approve the terms of a settlement under Rule 23(e). As set forth below, the Settlement easily satisfies these standards because it is a fair, reasonable, and adequate resolution for the Settlement Class. In particular, the Settlement balances the objective of securing the highest possible recovery with recognition of the substantial risks and costs of continued litigation, and the risk that, as in any complex case, the Settlement Class could receive nothing, or a sum far less than the Settlement Amount, after a trial and any appeals are completed. Accordingly, Lead Plaintiff and Lead Counsel believe that the Settlement is in the best interests of the Settlement Class and represents a highly favorable result.

In addition, under the Stipulation, each Settlement Class Member will be treated equitably because each Settlement Class Member that properly submits a valid Proof of Claim form will

receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation.  For all of these reasons, the proposed Settlement satisfies the standards for preliminary approval.

Plaintiff seeks preliminary approval so that notice may be disseminated to the Settlement Class and a Settlement Hearing and other Settlement-related dates may be scheduled.  At the Settlement Hearing, the Court will make a final determination as to (i) whether the Settlement is fair, reasonable, and adequate as a whole; (ii) whether to grant final certification of the Settlement Class under Rules 23(a) and (b)(3); (iii) whether the Plan of Allocation should be approved; and (iv) a proposed award of attorneys' fees and expenses and a proposed amount to be awarded to the members of Lead Plaintiff, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with their representation and work on behalf of the Settlement Class.

## II.   PROCEDURAL HISTORY OF THE LITIGATION

This Action has a substantial procedural history, which helped provide the Settling Parties with an extensive understanding of all of the relevant issues when negotiating and ultimately agreeing to the Settlement.

Nearly four years ago, on May 31, 2018, John Alberici filed the initial complaint in *Alberici v. Recro Pharma, Inc., et al.,* No. 2:18-cv-02279-MMB in the United States District Court for the Eastern District of Pennsylvania (the "Court").  ECF No. 1. On October 5, 2018, the Court appointed the Recro Investor Group as Lead Plaintiff, Pomerantz LLP as Lead Counsel, and Kaskela Law LLC as liaison counsel.  ECF No. 21.

On December 11, 2018, Lead Plaintiff filed the Class Action Amended Complaint ("Amended Complaint"), alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act").  ECF No. 26.

On February 8, 2019, Defendants moved to dismiss the Amended Complaint.  ECF No. 31. Lead Plaintiff filed its opposition to the motion to dismiss on April 9, 2019.  ECF No. 32.

Defendants filed a reply in support of their motion to dismiss on May 9, 2019.  ECF No. 33.  The court held oral argument on the motion on June 26, 2019, and supplemental memoranda were filed by the Lead Plaintiff and Defendants on August 30, 2019 and September 27, 2019, respectively. ECF Nos. 41, 43. The Court issued a memorandum and order granting the motion to dismiss the Amended Complaint without prejudice on February 14, 2020.  ECF Nos. 47-48.

On April 24, 2020, Lead Plaintiff filed the Second Amended Class Action Complaint ("Second Amended Complaint"), alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act").  ECF No. 50.

On June 18, 2020, Defendants moved to dismiss the Second Amended Complaint.  ECF No. 51.  Lead Plaintiff filed its opposition to the motion to dismiss on August 17, 2020.  ECF No. 54.  Defendants filed a reply in support of their motion to dismiss on September 16, 2020.  ECF No. 56.  The Court issued a memorandum and order denying the motion to dismiss the Second Amended Complaint on March 1, 2021.  ECF Nos. 59-60.

After the Court's March 1, 2021 order, fact and expert discovery proceeded.  Lead Counsel served discovery requests, received over a hundred thousand pages of documents from Defendants, Defendants' experts, and third parties, engaged in extensive document review, participated in numerous meet and confers, and took several depositions of Key Opinion Leaders and a former Recro employee.  In addition, discovery related to class certification occurred.  The three members of the Recro Investor Group – Daniel Wessler, John Alberici, and Ronald Davidson – produced documents, and Defendants took their depositions.   Additionally, the parties' experts were deposed.

On September 30, 2021, Lead Plaintiff moved for class certification and appointment of class representative and class counsel. ECF No. 76.   Defendants filed their opposition on

November 30, 2021, and Plaintiff filed a reply on January 6, 2022.  ECF Nos. 81-82 and 85-86, respectively.

On January 15, 2022, Lead Plaintiff served expert reports on Defendants for their damages and FDA experts. Defendants served damages and FDA rebuttal expert reports on March 1, 2022.

Given the extensive discovery in this matter, the Court's decisions on the motion to dismiss, the parties' extensive class certification briefing, and Plaintiff's Counsel's extensive experience in securities fraud cases and trials, Plaintiff had a detailed understanding by the time of the Settlement of what key witnesses would testify to, the critical issues to be proven at trial, and the relative strengths and weaknesses of Plaintiff's claims and Defendants' defenses.

The parties also engaged in arm's-length settlement discussions, including extensive mediation with Jed Melnick of JAMS ADR, as detailed below in §IV.  In advance of the mediation, which took place in June 2021, the parties submitted detailed mediation statements.  The parties negotiated in good faith, but were unable to reach a resolution at mediation, as the parties' positions remained far apart.  Settlement discussions resumed later on and the mediator worked closely with the parties to achieve a settlement in this matter.  These negotiations were protracted, complex, and challenging.  After extensive further discussions and negotiations, with the active involvement of the mediator, the parties reached an agreement-in-principle to settle the case on the terms set forth herein and the parties ultimately asked the Court to stay all deadlines on March 24, 2022 to allow the parties to focus their attention on finalizing the settlement. ECF No. 107.

## III.    THE SETTLEMENT TERMS

This Settlement requires $1,400,000.00 to be paid into an Escrow Account for the benefit of the Settlement Class.  That amount, plus accrued interest, comprises the Settlement Fund.

Notice to the Settlement Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund.  Stipulation, ¶2.8.  Lead

Plaintiff proposes a nationally recognized class action settlement administrator, Strategic Claims Services, to be retained here subject to the Court's approval.  The proposed notice plan and plan for claims processing are discussed below in §VI.C.1.

Because the Settlement Fund is a "qualified settlement fund," within the meaning of Treasury Regulation §1.468B-1, the income earned on the Settlement Fund is taxable.  All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid out of the Settlement Fund.

Lead Counsel will submit an application with its opening papers in support of final approval of the Settlement, on behalf of all Plaintiff's Counsel, for: (a) an award of attorneys' fees not to exceed 33.4% of the Settlement Amount; (b) payment of expenses and charges resulting from the prosecution of the Action in an amount not to exceed $440,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  In addition, Plaintiff will seek awards of no more than $22,500.00 in the aggregate pursuant to 15 U.S.C. §78u-4(a)(4) in connection with Lead Plaintiff's representation of the Settlement Class. Such fees, expenses, and awards shall be paid from the Settlement Fund.

Once Notice and Administration Expenses, Taxes and Tax Expenses, and Court-approved attorneys' fees and expenses and any award(s) to the Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00.  Any amount remaining following the distribution shall be further distributed in an economically feasible manner.  Stipulation, ¶5.9.  The Plan of Allocation treats all Settlement Class Members equitably based on the timing of their Recro share purchases, acquisitions, and sales.

Plaintiff and Defendants have entered into a Supplemental Agreement which provides that Defendants shall have the option to terminate the Stipulation in the event that valid requests for exclusion from the Settlement Class exceed certain criteria.  Stipulation, ¶7.3.

In exchange for the benefits provided under the Stipulation, Settlement Class Members who do not opt-out of the Settlement will release any and all claims against Defendants that both (i) arise out of, are based upon, or are related in any way to the allegations, transactions, facts, events, matters, occurrences, disclosures, statements, representations, or omissions that were referred to or alleged, or that could have been referred to or alleged, in the Action; and (ii) relate in any way to the purchase or acquisition of Recro common stock by the Settlement Class during the Class Period.  Stipulation, ¶1.27.

## IV.  THE SETTLEMENT RESULTED FROM ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

The Settling Parties engaged in extensive arm's-length negotiations, including mediation conducted by Jed Melnick of JAMS ADR, a nationally known mediator of securities class actions.

In advance of the mediation, which took place in June 2021, the parties submitted detailed mediation statements.  The parties negotiated in good faith, but were unable to reach a resolution at mediation, as the parties' positions remained far apart.  Settlement discussions resumed later on and the mediator worked closely with the parties to achieve a settlement in this matter.  These negotiations were protracted, complex, and challenging.  After extensive further discussions and negotiations, with the active involvement of the mediator, the parties eventually agreed to the mediator's proposal to settle for $1.4 million, and reached an agreement-in-principle to settle the case on the terms set forth herein.  The parties ultimately asked the Court to stay all deadlines on March 24, 2022 to allow the parties to focus their attention on finalizing the settlement. ECF No. 107.

## V.     FRAMEWORK FOR CLASS ACTION SETTLEMENTS

Rule 23(e) requires court approval for any compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class . . . may be settled . . . only with the court's approval.").  It is well established in this Circuit that the settlement of class action litigation is both favored and encouraged.  *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("This presumption is especially strong 'in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Curiale v. Lenox Grp., Inc.*, No. 07-1432, 2008 WL 4899474, at *5 (E.D. Pa. Nov. 14, 2008) ("'The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"); *In re CIGNA Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (Baylson, J.) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years.").

The *Manual for Complex Litigation* describes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to class members; and (3) a final approval hearing.  *See Manual for Complex Litigation*, §21.63 (4th ed. 2004).  At this juncture, Lead Plaintiff requests that the Court take the first and second steps in the settlement approval process by entering the Proposed Preliminary Approval Order and ordering the dissemination of notice to the Settlement Class.

## VI.   PRELIMINARY APPROVAL IS WARRANTED

Pursuant to Rule 23(e), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also Jones v. Com. Bancorp, Inc.*, No. 05-5600 (RBK), 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Courts make a preliminary evaluation of the fairness of the settlement, prior to directing that notice be given to members of the settlement class."). Rule 23(e)(2) provides:

> (2)   Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)   the class representatives and class counsel have adequately represented the class;
> >
> > (B)   the proposal was negotiated at arm's length;
> >
> > (C)   the relief provided for the class is adequate, taking into account:
> >
> > > (i)   the costs, risks and delay of trial and appeal;
> > >
> > > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)   any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors overlap with those set forth by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975):

> "(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best

possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. . . ."[3]

The Third Circuit has explained that there is an initial "presumption of fairness" of the settlement if this Court finds that: "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *See Warfarin*, 391 F.3d at 535.

These factors favor preliminary approval here.  *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-cv-05135, 2019 WL 1499475, at *5 (E.D. Pa. Apr. 5, 2019) (granting final approval, analyzing Rule 23(e)(2) and the *Girsh* factors).

## A.      The Proposed Settlement Is Fair

The first two factors for the Court's consideration under Rule 23(e)(2) are the adequacy of representation for the class and the arm's-length nature of the settlement negotiations.  *See* Fed. R. Civ. P. 23(e)(2)(A)-(B).  These two factors overlap with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed.  *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (Courts have held that "a presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.").

Here, the proposed Settlement is fair because it was the result of extensive arm's-length negotiations by experienced counsel, overseen by a highly-respected securities litigation mediator, and the Settling Parties had a full understanding of the merits of the case.

First, Lead Plaintiff and Lead Counsel have more than adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently and zealously prosecuting this

---

[3]      The *Girsh* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'"  *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

Action on behalf of the Settlement Class, including, among other things, engaging in extensive document review, deposing witnesses, defending the depositions of class representatives, filing briefs in support of class certification, producing expert reports on market efficiency, damages, and FDA issues, deposing Defendants' expert, and engaging in extensive settlement negotiations and mediation. *See In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (approving settlement after arm's-length negotiation after parties "had fully briefed the main issues in the case and conducted merits-based . . . discovery").

Lead Counsel are highly competent lawyers who possess substantial litigation experience, including experience in prosecuting complex securities class actions in this Circuit and throughout the country.  Pomerantz has successfully prosecuted hundreds of securities class actions on behalf of damaged investors.  *See In re: Petrobras Sec. Litig.,* 312 F.R.D. 354, 362 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom*. *In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) (Pomerantz is "qualified, experienced and able to conduct the litigation." Pomerantz, as sole Lead Counsel for the class, achieved a historic $2.95 billion settlement, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer); *see also see also Kanefsky v. Honeywell International Inc.*, No. 18-CV-15536 (WJM), 2022 WL 1320827, at *8 (D.N.J. May 3, 2022) (finding Pomerantz to be "highly experienced," to have "won substantial recoveries" in securities class actions and "qualified");  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014) ("Pomerantz LLP has extensive experience and a stellar reputation in the field of class action and securities litigation"); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 76 (E.D.N.Y. 2004) ("The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification."); Szydlo Decl., Exhibit 2 (firm resume of Pomerantz LLP).  The collective

tenacity of Lead Counsel and Lead Plaintiff helped result in this Settlement of $1,400,000.00, which will provide significant benefits to the Settlement Class.

Accordingly, "'counsel had an adequate appreciation of the merits of the case before negotiating'" the Settlement. *Warfarin*, 391 F.3d at 537; *Schering-Plough*, 2010 WL 1257722, at *10. As detailed above in §II, given the numerous documents reviewed, depositions of key witnesses, class certification briefing, and reports and depositions of experts, by the time of Settlement, Lead Counsel knew what important witnesses would testify to and what hurdles would need to be overcome at trial. All of this, combined with Lead Counsel's extensive litigation experience, including extensive experience in securities fraud cases and trials, was more than sufficient to evaluate the relative strengths and weaknesses of the claims and defenses in this case. *See Viropharma*, 2016 WL 312108, at *11; *In re Philips/Magnavox Television Litig.*, No. 09-3072(CCC), 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("'Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent.'").

Bringing this experience and knowledge to bear, Lead Counsel believes that the Settlement is in the best interests of the Settlement Class. Courts recognize that counsel's judgment is entitled to considerable weight in this context. *See Viropharma*, 2016 WL 312108, at *11 ("[W]hen the settlement results from arm's-length negotiations, the Court 'affords considerable weight to the views of experienced counsel regarding the merits of the settlement.'"); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) ("'[A] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.'"), *aff'd*, 821 F.3d 410 (3d Cir. 2016); *Alves v. Main*, No. 01-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in

this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'"), *aff'd*, 559 F. App'x 151 (3d Cir. 2014).

Second, Rule 23(e)(2)(B)'s evaluation of whether the Settlement was negotiated at arm's-length is readily met here. As detailed above in §IV, negotiations originally began in 2021, and resumed later on. These negotiations in total involved a mediation session with Jed Melnick and many phone calls, and e-mail communications thereafter. The negotiations were vigorous and adversarial, and the Defendants were represented by highly sophisticated counsel. After these lengthy settlement talks, the mediator made a recommendation that the parties agree to a settlement for $1.4 million. The parties ultimately agreed to the mediator's recommended settlement for that amount. The mediator's direct participation further ensures that negotiations were non-collusive and conducted at arm's-length. *Bredbenner v. Liberty Travel, Inc.*, No. 09-905 (MF), 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'");[4] *CIGNA*, 2007 WL 2071898, at *3 (Baylson, J.) (approving settlement where it was "clear that negotiations for the settlement occurred at arm's length" assisted by a mediator); *Steele v. Welch*, No. 03-942, 2005 WL 3801469, at *1 (E.D. Pa. May 20, 2005) (Baylson, J.) (approving settlement that was "arrived at after hard bargaining . . . .").

**B.      The Benefits Under the Settlement Are More Than Adequate**

Rule 23(e)(2)(i), which overlaps with *Girsh* in many respects (*i.e.*, factors 1, 4-9), instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that

---

[4]      *See also Sanders v. CJS Sols. Grp., LLC*, No. 17 Civ. 3809 (ER), 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated [] at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

trial and appeal would inevitably impose.[5]  *Compare* Fed. R. Civ. P. 23(e)(2)(i) *with Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense and likely duration of the litigation). This aspect of Rule 23(e)(2)(i) also weighs in favor of approval.

"Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *4 (D.N.J. July 29, 2013).  This case was filed nearly four years ago, and undoubtedly faces many risks to obtain ultimate resolution, including summary judgment and trial, and the inevitable appeals would significantly lengthen the time until any Settlement Class Member received recovery.  *See Ins. Brokerage*, 282 F.R.D. at 103 ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class.").

The recovery is fair, reasonable, and adequate considering the risks of continued litigation, which would require Plaintiff to prove (and defeat Defendants' counter-arguments regarding) falsity, materiality, scienter, loss causation, and damages at trial.  *See Girsh*, 521 F.2d at 157 (risks of establishing liability and damages are factors that can support settlement approval).  For example, Defendants have maintained that their statements with respect to Recro's target opportunities were not false or misleading, and, even if their statements were false or misleading, the element of scienter has not been met. Further, with respect to loss causation, Defendants have argued that there is no link between the alleged misconduct and Recro's stock price decline on the relevant disclosure date.  It is clear that, at summary judgment and trial, Defendants and their

---

[5]    The second *Girsh* factor, the reaction of the class to the settlement, does not yet apply, and will be addressed at the final approval stage after the Settlement Class Members have been given notice of the Settlement and have had an opportunity to be heard.

expert would have argued against loss causation and damages with respect to the disclosure date at issue. Plaintiff's expert would have defended his own conclusions with respect to loss causation and damages with equal vigor.  Each expert's testimony would have relied on complex and, in some cases, highly technical economic arguments.

In the end, given that the testimony of the parties' experts on loss causation and damages would vary substantially, these crucial elements would have been resolved at trial, in large part, through a "battle of experts."  *See In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001).  Such a battle would increase the expense – as well as the risk – involved with advancing the litigation toward a positive resolution for Plaintiff and the Settlement Class.  Lead Plaintiff believes its case is strong but acknowledge, as it must, that there are risks to litigation and ultimate recovery.  *See Viropharma*, 2016 WL 312108, at *13 (stating that "this issue of causation directly impacts the difficulty in proving damages"); *Par Pharm.*, 2013 WL 3930091, at *6 (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context"); *CIGNA*, 2007 WL 2071898, at *3 (Baylson, J.) (approving settlement in "complex" case that "could have depended on a jury's assessment of the credibility of various witnesses called by both sides" and in which there were "considerable risks in establishing damages, particularly in view of the determined and respectable loss causation arguments put forward by Defendants"); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000) ("[T]he relationship between the price decline and defendants' conduct would have been hotly contested, and the outcome of this dispute is difficult to predict.").

Taking into account that the case has been litigated for nearly four years, the risks and uncertainties of continued litigation, and the amount of the recovery, the Settlement here is certainly reasonable and should be preliminarily approved.  *See Girsh*, 521 F.2d at 157.  Indeed, given the complexity of this case, the sophisticated Defendants involved, and the uncertain delay

of continued litigation, the $1,400,000.00 Settlement is an outstanding result.  When analyzing the risks of establishing liability and damages at trial, the court should "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action.'" *Huffman*, 2019 WL 1499475, at *4.  As such, the Court should find that the relief provided under the Settlement is adequate, given the complexity of the case, the risks, and the damages alleged.

### C.      The Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) also enumerates three additional factors that a court considers in approving a settlement:  (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence of any other "agreement[s]."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  These factors are also readily met.

### 1.      The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are more than sufficient.  The notice plan includes direct mail notice to all those who can be identified with reasonable effort, and notification of known securities brokers and other financial institutions, to facilitate the identification of their clients who may be Settlment Class Members.  This will be supplemented by the publication of the Summary Notice once in *GlobeNewswire*.  In addition, a toll-free hotline and a settlement-specific website will be created.  Key documents will be posted on the website, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.

The claims process is also effective and includes a standard claim form which requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation (Exhibit A-1 ¶¶ 33-47) will govern how Settlement Class Members' claims

will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Lead Counsel's economic consultant.

### 2.    Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  The Stipulation provides that Lead Counsel, on behalf of all Plaintiff's Counsel, will apply to this Court for an award of attorneys' fees and expenses 35 days prior to the Settlement Hearing.  *See* Preliminary Approval Order, ¶19.  As set forth in the proposed Notice, Lead Counsel will request attorneys' fees not to exceed 33.4% of the Settlement Amount and litigation expenses not to exceed $440,000, plus interest earned on these amounts at the same rate as earned by the Settlement Fund.  In addition, Plaintiff will seek awards of no more than $22,500.00 in the aggregate pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Settlement Class.

This fee request is consistent with attorney's fees amounts regularly approved in connection with comparable securities class action settlements.  *See*, *e.g.*, *Viropharma*, 2016 WL 312108, at *17 (awarding attorney's fees of 30% and expenses of approximately $155,000 on $8 million recovery); *Steele*, 2005 WL 3801469, at *2 (Baylson, J.) (awarding attorney's fees in two related cases of 30% and 33%, and expenses of approximately $49,000 and $46,000, on recovery of $2.25 million and $1.75 million, respectively); *In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. CIV.A. 08-CV-285DMC, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("review of 289 settlements demonstrates 'average attorney's fees percentage [of] 31.71% with a median value that turns out to be one-third'") (quoting *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL 3008808, at *15 (D.N.J. Nov. 9, 2005)).

Lead Counsel's notice of its maximum expense request of $440,000 is based on the substantial expenses that Lead Counsel has incurred over nearly four years of litigation, and allows

for any additional expenses incurred prior to final approval. The Action included an extensive factual investigation, the production and review of over a hundred thousand pages of documents from Defendants, Defendants' experts, and third parties, as well as fact depositions, expert depositions, expert reports on market efficacy, damages and FDA issues, and extensive briefing on Defendants' motion to dismiss, and Plaintiff's motion for class certification, among other things. The expense amount also includes the costs of mediation overseen by Jed Melnick.

### 3. The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action. The Settling Parties have entered into a supplemental agreement which provides that Defendants will have the right to terminate the Settlement in the event that valid requests for exclusion from the Settlement Class exceed the criteria set forth in the Supplemental Agreement. *See* Stipulation, ¶7.3.

### 4. Settlement Class Members Are Treated Equitably

The final factor, set out in Rule 23(e)(2)(D), considers whether Settlement Class Members are treated equitably. As discussed above, all Settlement Class Members are treated equitably under the terms of the Stipulation, which provides that each Settlement Class Member that properly submits a valid Proof of Claim form will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation. Preliminary approval is thus warranted here.

Each factor identified under Rule 23(e)(2) and in the Third Circuit's *Girsh* opinion is satisfied. Moreover, pursuant to *Warfarin*, 391 F.3d at 535, the Settlement is entitled to a presumption of fairness. Given the litigation risks involved and the complexity of the underlying issues, the $1,400,000.00 recovery pursuant to the Settlement is significant, and could not have been achieved without the commitment of Plaintiff and the hard work of Plaintiff's Counsel. Lead

Plaintiff and Lead Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, and that notice of the Settlement should be sent to the Settlement Class.

## VII.   THE COURT SHOULD MAKE A PRELIMINARY DETERMINATION ON CLASS CERTIFICATION

In preliminarily approving the proposed settlement, this Court should preliminarily determine that class treatment is appropriate. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). The Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the Final Approval Hearing. *In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 586 (3d Cir. 2014). "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.*

Rule 23 requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This action meets these requirements.

## A.     Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Although the exact number of Settlement Class Members is not precisely known, courts generally presume that the numerosity requirement has been satisfied "when a class action involves a nationally traded security." *In re Cigna Corp Sec. Litig.*, No. CIV.A. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006). Here, numerosity is satisfied as Recro's common stock was listed on the NASDAQ with 19.05 to 20.51 million shares of common stock outstanding during the Class Period.

## B.     Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). The common issue "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

Courts will usually find commonality where, as here, the plaintiffs in securities cases involving alleged misrepresentations appeared in a company's SEC filings. *Sullivan*, 667 F.3d at 336; *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 201 (E.D. Pa. 2008) ("Courts in this Circuit also have recognized that securities fraud cases often present a paradigmatic common question of law

- 20 -

or fact of whether a company omitted material information or made a misrepresentation that inflated the price of its stock.").

### C. Typicality

Rule 23(a)(3) requires that the representative's claim be typical of those of the members of the class. If "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–84 (3d Cir. 2001). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992).

Here, Plaintiff's claims are similar to those of the other members of the Settlement Class. Just like the other members of the proposed Settlement Class, Plaintiff purchased Recro shares at prices that were allegedly artificially inflated by Defendants' allegedly false and misleading statements and were harmed when the alleged truth emerged. Plaintiff's claims stand or fall with those of the Settlement Class, and thus, they are typical.

### D. Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: *first*, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; *second*, the plaintiff's counsel must be qualified to represent the class. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995). A named plaintiff is "adequate" if his interests do not conflict with those of the Settlement Class. Rule 23(g), adequacy of class counsel, is now considered separately from the determination of the adequacy of the class representatives. In any event, both prongs of the adequacy requirement are satisfied here.

### 1.    Adequacy of the Proposed Class Representatives

Proposed Class Representative, the Recro Investor Group, has no interests that are antagonistic to other members of the proposed Settlement Class, and has no unique defenses. Plaintiff, on its own behalf and on behalf of all Settlement Class members, seeks to recover damages caused by Defendants' alleged unlawful conduct. Their interests are congruent with, and not antagonistic to, other Settlement Class Members' interests.

### 2.    Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Nafar v. Hollywood Tanning Sys., Inc.*, No. CIV.A.06-CV-3826 DMC, 2008 WL 3821776, at *7 (D.N.J. Aug. 12, 2008).

Lead Counsel is highly experienced in prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country (*See* Szydlo Decl., Exhibit 2 (firm resume of Pomerantz LLP). Courts have consistently found Pomerantz to be well suited as class counsel in securities class actions. *See In re: Petrobras Sec. Litig.,* 312 F.R.D. at 362 (Pomerantz is "qualified, experienced and able to conduct the litigation." Pomerantz, as sole Lead Counsel for the class, achieved a historic $2.95 billion settlement, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer); *see also Honeywell International Inc.*, 2022 WL 1320827, at *8 (finding Pomerantz to be "highly experienced," to have "won substantial recoveries" in securities class actions and "qualified"); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. at 181 ("Pomerantz LLP has extensive

- 22 -

experience and a stellar reputation in the field of class action and securities litigation"); *Steinberg*, 224 F.R.D. at 76 ("The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification.").

As detailed in Section VI.C.2. above, Lead Counsel expended considerable time and work in this litigation.   Given Lead Counsel's extensive securities class action experience, it is knowledgeable and capable of evaluating cases to determine whether a settlement, and at what stage of the litigation, would be beneficial to the class, and when to continue pursuing litigation of an action. As such, Pomerantz is more than adequate to serve as settlement class counsel.

**E.      Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication**

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish at least one of the requirements of Rule 23(b). Here, Plaintiff seeks to certify a Settlement Class under Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that:

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b). Plaintiff satisfies the predominance and superiority criteria of Rule 23(b)(3). "The focus of the predominance inquiry is on liability, not damages." *Smith v. Suprema Specialties, Inc.*, No. CIV. 02-168 (WHW), 2007 WL 1217980, at *9 (D.N.J. Apr. 23, 2007) (citing cases).

When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class. *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002), *aff'd sub nom. Wiesfeld v. Sun Chem. Corp.*, 84 F. App'x 257 (3d Cir. 2004) ("The requirement that common questions of law or fact predominate over individual issues

does not mean that the existence of individual issues defeats certification[.]"). Here, the existence of common questions and their predominance over individual issues are exemplified by the fact that if every Settlement Class Member were to bring an individual action, each plaintiff would be required to demonstrate the same omissions or misrepresentations to prove liability. Thus, this case is an example of the principle that the predominance requirement is "readily met" in many securities class actions. *Amchem Products, Inc.*, 521 U.S. at 625.

Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Plaintiff's and the Settlement Class Members' claims. For certification of a settlement class, as Plaintiff seeks here, the Court is not required to analyze each superiority factor in great detail. The Supreme Court held that a court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *Amchem Products, Inc.*, 521 U.S. at 620. Rather, the court is to focus on evaluating the class definition to ensure that it is not "unwarranted or overbroad." *Id.* The Third Circuit, and courts throughout the Circuit, have followed suit recognizing that "certain Rule 23 considerations, such as 'whether the case, if tried, would present intractable management problems,' are not applicable in the settlement class context." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 374 (E.D. Pa. 2019) ("[B]ecause a settlement obviates the need for trial, concerns regarding the manageability of a Rule 23(b)(3) class disappear.").

Court have recognized that a class needs to be "readily ascertainable based on objective criteria" for certification. *Ridley v. MRS BPO, LLC*, No. CV 18-12696 (NLH/JS), 2019 WL 6888532, at *11 (D.N.J. Dec. 18, 2019). To demonstrate ascertainability, the Third Circuit requires a plaintiff to show: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members

fall within the class definition. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015)). Further, a plaintiff is not required to identify every class member, but must simply show that "class members can be identified." *Id.* Here, the proposed class is clearly defined as Recro investors who purchased or otherwise acquired publicly traded Recro common stock during a finite period. As such, a class action is the superior method of adjudication and satisfies Rule 23(b)(3).

## VIII.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

Rule 23(e) governs notice requirements for settlement or "compromises" in class actions. The Rule provides that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. Fed. R. Civ. P. 23(e).  The Rule provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).   In addition, Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Here, the Settling Parties have negotiated the form of the notices to be disseminated to all Persons who fall within the Settlement Class definition and whose names and addresses can be identified with reasonable effort.  The proposed Notice and Summary Notice are attached to the proposed Preliminary Approval Order as Exhibits A-1 and A-3, respectively.  The proposed Notice apprises Settlement Class Members of (among other disclosures) the nature of the Action, the definition of the Settlement Class, the claims and issues in the Action, and the claims that will be released in the Settlement.  The Notice also: (i) advises that a Settlement Class Member may enter an appearance through counsel if desired; (ii) describes the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3); (iii) states the procedures and deadline for Settlement Class Members to exclude themselves from the Settlement Class and for objection to

- 25 -

the proposed Settlement, the proposed Plan of Allocation, and the requested attorneys' fees and expenses; (iv) states the procedures and deadline for submitting a Proof of Claim form to recover from the Settlement; and (v) provides the date, time, and location of the Settlement Hearing.  The Settling Parties further propose to supplement the mailed Notice with the Summary Notice, to be published once in *GlobeNewswire*.  *See supra* §VI.C.1.

The Notice and Summary Notice also satisfy the Private Securities Litigation Reform Act of 1995's separate disclosure requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per-share basis; (ii) that the Settling Parties do not agree on the average amount of damages per share that would be recoverable in the event Plaintiff prevailed at trial, and stating the issue(s) on which the Settling Parties disagree; (iii) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses, including the amount of the requested fees and expenses determined on an average per-share basis; (iv) contact information for Lead Counsel; and (v) the reasons the Settling Parties are proposing the Settlement.  The contents of the Notice and Summary Notice therefore satisfy all applicable requirements.

Lead Plaintiff also requests that the Court appoint Strategic Claims Services as Claims Administrator to provide all notices approved by the Court to Settlement Class Members, to process Proof of Claim forms, and to administer the Settlement.  Strategic Claims Services is a recognized leader in legal administration services for class action settlements and legal noticing programs, and has implemented successful claims administration programs in hundreds of class actions.  *See* https://www.strategicclaims.net.

The proposed notice plan readily meets the Rule 23 standards, and is typical of notice plans in similar actions.  For all of these reasons, the notice program should be approved by the Court.

## IX.    PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Settlement Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to Rule 23(e)(2).  *See Manual for Complex Litigation*, *supra*, §21.63.

Lead Plaintiff has submitted an agreed-upon Preliminary Approval Order ("PAO") concurrently with this motion, setting forth the proposed schedule of events from here through final approval.  Specifically, Lead Plaintiff proposes the following schedule of events leading to the Settlement Hearing:

| | |
|---|---|
| Deadline for commencement of mailing of Notice and Proof of Claim ("Notice Date") | No later than 20 business days following entry of the PAO |
| Deadline for publishing the Summary Notice | No later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion from the Settlement Class or filing objections | Received 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers, affidavit or declaration of mailing and publishing Notice, and list of all Persons who have submitted a timely Request for Exclusion and determinations as to whether any Request for Exclusion was not submitted timely | 7 calendar days prior to the Settlement Hearing |
| Deadline for Settlement Class Members to file Proof of Claim and Release forms | 120 calendar days after the Notice Date |
| Settlement Hearing | At least 120 calendar days after entry of the PAO, or at the Court's earliest convenience |

This proposed schedule complies with Rule 23, while securing the recoveries for Settlement Class Members in a timely fashion.

## X.    CONCLUSION

Lead Plaintiff respectfully requests that the Court grant their motion for preliminary approval and enter the Settling Parties' Proposed Order Preliminarily Approving Settlement and Providing for Notice, which is Exhibit A to the Stipulation.

DATED:  May 10, 2022

**POMERANTZ LLP**

By: _Brenda Szydlo_

Jeremy A. Lieberman (admitted _pro hac vice_)
Brenda Szydlo (admitted _pro hac vice_)
Villi Shteyn (admitted _pro hac vice_)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
bszydlo@pomlaw.com
vshteyn@pomlaw.com

_Lead Counsel for Lead Plaintiff and the proposed Class_

**KASKELA LAW LLC**
D. Seamus Kaskela (Bar No. 204351)
18 Campus Boulevard, Suite 100
Newtown Square, PA 19073
Telephone: (484) 258–1585
Facsimile: (484) 258–1585
Email: skaskela@kaskelalaw.com

_Liaison Counsel_

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email: peretz@bgandg.com

_Additional Counsel_