**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN ALBERICI,** individually and on behalf of all others similarly situated, *Plaintiffs,*<br><br>v.<br><br>**RECRO PHARMA, INC., GERALDINE A. HENWOOD, STEWART MCCALLUM**, and **JOHN HARLOW**, *Defendants*. | **CIVIL ACTION NO. 18-2279** |

**MEMORANDUM RE: MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN FOR ALLOCATION, AWARD OF ATTORNEY'S FEES AND EXPENSES**

Baylson, J.                                                             December 1, 2022

## I.      Introduction

The Court has considered the request of Lead Plaintiff, Recro Investor Group, for final approval of the settlement and award of counsel fees and expenses. The sequence of events in this case resembles the short life of a failed opera. With strong advance sales, the Director/Conductor of this Opera had been hard at work in preparation, with many hours spent, and was very much looking forward to the lead Soprano's debut and success. However, after opening night's overture, when Soprano took the stage, she couldn't sing a note. The Conductor quickly realized that the Soprano on stage was different than the Soprano he heard at an audition, who was excellent. He had been deceived! What should he do? After a quick consultation with the orchestra, they agreed to stop the Opera and cancel the rest of the Opera's performances. The audience was in an uproar and demanded a refund. The Conductor had to make a quick decision. Any money the Conductor

gave back to the audience would be taken out of the wages due to the orchestra and "a success fee" for himself. How should the huge amount of advanced sales be allocated?

The Conductor wanted to be fair to the orchestra members and the audiences, but also fair to everyone who had purchased tickets to a grand evening at the Opera. He also expected to receive some money for himself for all of the work he had done without any compensation so far.

This quandary presents itself in this case.

I.   **BACKGROUND**

   **A. Procedural Background**

This case is a securities fraud lawsuit brought against Defendant Recro Pharma, Inc., a publicly traded specialty pharmaceutical company, and a few of Recro's executive officers for violations of Sections 10b-5 and 20(a) of the Securities Exchange Act.  A class action complaint was filed on May 31, 2018 by John Alberici, a Recro Investor Group member, on behalf of all similarly situated plaintiffs.  The claims stem from Recro's stock plunging more than 50% immediately after Recro informed its investors that the FDA had declined to approve Recro's experimental analgesic drug 'meloxicam' for sale and marketing in the U.S, which all occurred on May 24, 2018.  The individuals who are members of the Lead Plaintiff representing the class, Recro Investor Group, declared in their respective affidavits their pre-announcement ownership of Recro shares totaling approximately $280,000 in value (all of which had apparently been procured within two months of the announcement, and for one member the day before the announcement) and alleged that Defendants' violations of the securities laws resulted in losses of approximately $130,000 from the devaluation of their Recro shares.

On July 30, 2018, Alberici filed a motion to appoint Pomerantz LLP as lead counsel and Kaskela Law LLC as liaison counsel for the class, which would be represented by the Recro

Investor Group consisting of the individuals with "the largest financial interest in this litigation." On October 5, 2018, the Court approved the appointments of counsel and class representative. An Amended Complaint was filed on December 11, 2018, and Defendants filed a Motion to Dismiss Amended Complaint on February 8, 2019. A hearing regarding the motion to dismiss was held on June 26, 2019 and supplemental briefing was ordered by the Court due September 26, 2019. On November 12, 2019, the case was placed by order of the Court on the Civil Suspense Docket to allow the Court more time to resolve issues related to the motion to dismiss. On February 14, 2020, the Court ordered the case dismissed without prejudice based on Plaintiffs' failure to plead a strong inference of scienter, as outlined in the Court's 37-page opinion. See Alberici v. Recro Pharma, Inc., No. 18-2279, 2020 WL 806719 (E.D. Pa. Feb. 14, 2020). On April 24, 2020 Plaintiffs filed a Second Amended Complaint, and Defendants responded with a Motion to Dismiss Second Amended Complaint on June 18, 2020. After settlement talks again failed, the Court denied Defendants' motion to dismiss on March 1, 2021 and a discovery schedule was set with a fact discovery deadline of March 15, 2022. See Alberici v. Recro Pharma, Inc., No. 18-2279, 2021 WL 798299 (E.D. Pa. Mar. 1, 2021).

After several months of discovery Plaintiffs filed a motion for class certification on September 30, 2021, which became fully briefed once Plaintiffs filed their reply on January 6, 2022. The Court set an evidentiary hearing to deal with some factual issues, but Plaintiffs submitted a letter to the Court on March 24, 2022 stating that they had reached a settlement-in-principle with Defendants and the hearing was cancelled. Plaintiffs filed an unopposed motion for preliminary approval of the settlement and preliminary certification of a settlement class on May 10, 2022, which the Court conditionally granted. See May 12, 2022 Order (ECF No. 110). Plaintiffs then filed this Motion for Final Approval on September 21, 2022, along with a Notice of

Non-Opposition in Support that they filed on October 19, 2022.  The Court held a hearing on the Motion on October 26, 2022.  At the hearing, class counsel informed the Court that the case had run into various problems, included a lying confidential witness.  Class counsel argued that while paths to success in the litigation still existed, the discovery burden (class counsel estimated that over 100,000 pages of discovery were produced) and litigation risks made settlement the most favorable option for the class.

### B.  Final Approval Briefing

In its briefing of this Motion, Lead Plaintiff seeks final approval of an all-cash settlement totaling $1,400,000.  Lead Plaintiff relates that the settlement amount was achieved through arms-length negotiation overseen by a mediator and that the amount represents the amount of work that went into the "hard-fought" litigation.  Lead Plaintiff argues that the settlement meets the requirements under Rule 23(e)(2) and under Third Circuit case law, notably the factors outlined in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975).  Lead Plaintiff also relates in its Notice of Non-Opposition that 5,100 potential settlement class members were notified by either mail or email of the proposed class action settlement and plan of allocation, and that no objections were received.

From the settlement fund, Lead Plaintiff requests:

(1) $467,600 in attorney's fees which is one-third of the settlement amount, plus interest;

(2) $424,488.55 plus interest in reimbursed litigation expenses, and

(3) an award of $7,500 each to the three individual members of the Lead Plaintiff, Recro Investor Group.

Class counsel calculated its lodestar at $4,258,916.75, which is magnitudes above the settlement amount, let alone the requested attorney's fees.

## II.   LEGAL STANDARD

### A.  Approval of Settlement

A district court may only approve a settlement of class action litigation if it is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(1)(C). The Third Circuit has identified nine factors to guide district courts in approving proposed class action settlements.  These factors are:

(1) the complexity, expense, and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  Girsh, 521 F.2d at 156-57.

The Third Circuit has further held that a presumption of fairness attaches to settlement agreements if the district court finds:

(1) the negotiations occurred at arm's length;

(2) there was sufficient discovery;

(3) the proponents of the settlement are experienced in similar litigation; and

(4) only a small fraction of the class objected.  In re General Motors Corp., 55 F.3d 768, 785 (3d Cir. 1995).

In evaluating the proposed settlement in this case, the Court notes that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years.  See id. (citing General Motors, 55 F.3d at 784; In re Sch. Asbestos Litig., 921 F.2d 1330, 1333 (3d Cir. 1990)).

For these reasons and the reasons stated at the October 26, 2022 settlement hearing, the Court will approve the settlement, notwithstanding that it is for a very low amount. The Court inquired of counsel for Lead Plaintiff at the hearing for more specific reasons than those stated in the Motion as to why, with damages forecasted at approximately $34 million, Lead Plaintiff agreed to settle this case for the relatively nominal amount of $1.4 million.  Plaintiff's counsel explained that they had run into various problems, primarily a confidential informant on whom Plaintiffs were heavily relying turning out to be not completely truthful.

Although a low settlement in a case of this nature is highly unusual, the Court finds that in view of the absence of any objections to the settlement, following appropriate Rule 23 notices, no purpose would be served by rejecting the settlement.  However, for the reasons below, the Court will award Lead Plaintiff lower than requested attorney's fees and will reduce requested reimbursed expenses.

### B.  Consideration of Attorney's Fees

The PSLRA provides that the attorneys for the class are not to be paid any more than "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).  While it is the duty of the court to ensure that the statute's command is carried out, our Court of Appeals has explained that in a case like this, a fee is

presumptively reasonable if it has been fixed in an agreement between a properly selected class representative and properly appointed class counsel. <u>In re Cendant Corp. Lit.</u>, 264 F.3d 201, 282-83 (3d Cir. 2001). This presumption may be rebutted if the awarded fee is shown to be (prima facie) "clearly excessive." <u>Id.</u> at 283; <u>AT & T</u>, 455 F.3d at 167-68.

However, the Court must also make its own independent evaluation of the proposed attorneys' fees, "primarily guided" by the factors set forth by the Third Circuit in <u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190 (3d Cir. 2000), which include:

(1) the size of the fund created and the number of persons benefitted;

(2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;

(3) the skill and efficiency of the attorneys involved;

(4) the complexity and duration of the litigation;

(5) the risk of nonpayment;

(6) the amount of time devoted to the case of class counsel; and

(7) the awards in similar cases. <u>Gunter</u>, 223 F.3d at 195 n.1.

These factors are not to be applied in a rigid, formulaic manner, but rather must be weighed in light of the facts and circumstances of each case. <u>Id.</u>  In certain cases, one factor may outweigh the others, and in "cases involving extremely large settlement awards, district courts may give these factors less weight." <u>In re Rite Aid Corp. Securities Litig.</u>, 396 F.3d 294, 301 (citing <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u>, 148 F.3d 283, 339; <u>In re Cendant</u>, 264 F.3d at 283).

III.   **ANALYSIS**

Concerning the request for award of attorney's fees, the Court starts with the fundamental proposition that in a class action settlement, where counsel fees are awarded out of the settlement amount, there is an inherent conflict between the interest of the class and the interest of counsel, having worked on the case for a number of years without any compensation—in other words, the Court has a responsibility to protect the interests of the class.  The district court's role under Rule 23(e) is that of "a fiduciary guarding the rights of the absent class members."  In re AT&T Corp., 455 F.3d 160, 175 (3d Cir. 2006); see also Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 279-80 (7th Cir. 2002) ("[C]ourts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of the fiduciaries"); In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001) (courts are required to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished") (internal quotes omitted).  This responsibility is *heightened* in the absence of objectors at the settlement phase, as is the case here.  While there are many factors and circumstances for a Court to consider in fulfilling this responsibility, the Third Circuit is clear that district courts should "engage in robust assessments of the fee award reasonableness factors when evaluating a fee request."  In re Rite Aid Corp. Securities Litig., 396 F.3d 294, 302 (3d Cir. 2005).

The Third Circuit has been clear that the reviewing court in a situation like this has essentially a fiduciary duty to protect the class from excessive counsel fees or reimbursement of expenses that are unreasonable under the circumstances.  See In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 731 (3d Cir. 2001) ("[R]eviewing courts retain an interest—a most special and predominant interest—in the fairness of class action settlements and attorneys' fee awards"); In re

Corel Corp. Inc. Securities Litig, 293 F.Supp.2d 484, 498 (E.D. Pa. 2003) (Brody, J.) (reviewing reasonableness of plaintiff's counsel's request for reimbursement for litigation expenses).  Factors to be considered in judging the reasonableness of a fee award or expense reimbursement include size of the fund, skill and efficiency of the attorneys, amount of time the attorneys devoted to the case, and awards in similar cases.  In re Rite Aid Corp. Securities Litig., 396 F.3d at 301.

In this case, it is obvious that counsel and the Lead Plaintiff undertook this case with high expectations, if only because counsel recorded a "lodestar" of attorney's fees (number of hours spent multiplied by the requested billing rate) of over $4 million.  See Lead Pl. Brief (Doc. No. 112-1) at 25.[1]

There is no question that the Pomerantz firm has expertise in securities litigation and has accumulated an exceptionally high record of successes, for which it has been well compensated. See Lead Pl. Preliminary Approval Brief (ECF No. 109), Ex. 2 ("Firm Resume").

However, in this case, the actual result—of agreeing to and requesting the Court to approve a $1.4 million settlement, which is basically 4% of the projected damages—requires the Court to scrutinize any request for attorney's fees and expenses.

The Court does not question the number of hours recorded.  There have been no objections filed by any member of the class after appropriate notice.  The Fee Petition contains sufficient details about the significant amount of work performed.  The Court also notes that, as is usual in cases of this nature, there was a very vigorous defense put forth by the Troutman Pepper law firm, which itself has a record for outstanding successes in defending cases of this nature.

---

[1] The Court notes in passing that the hourly rates requested by the Lead Plaintiff's law firm, Pomerantz LLP, are on the high side for the Philadelphia market.  See Lead Pl. Brief, Ex. A ("Lodestar"); compare Attorney Fees, Community Legal Services of Philadelphia, https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited Oct. 27, 2022) (noting a range of $110 to $700 for the Philadelphia market based on experience); Maldonado v. Houstoun, 256 F.3d 181, 187 (3d Cir. 2001) (noting that the fee schedule established by CLS is a "fair reflection" of hourly rates for Philadelphia lawyers).

### A.  Summary of Lead Up to Settlement

In January 2022, three years after the start of litigation and shortly following Lead Plaintiff's final briefing for its motion for class certification, Defendants sought an evidentiary hearing to address a number of factual issues raised by the briefing. The hearing was scheduled for April 2022.  Lead Plaintiff then sought to depose five more individuals beyond the Court's 10-deposition limit, including a Recro marketing director, two medical affairs directors, a market access VP and a sales VP, despite having already deposed Recro's CMO, another marketing VP, and a medical affairs director.  Defendants raised questions about Lead Plaintiff's fee agreement with Pomerantz LLP while expressing concerns about Lead Plaintiff engaging in a "fishing expedition" and the Court expressed concern about discovery issues in a subsequent teleconference on March 24, 2022 and set a discovery hearing for the next day.  However, the Court received a letter that same day from Lead Plaintiff stating the parties had reached an agreement-in-principle to settle the case.

These circumstances and result obligate the Court to analyze them in its responsibility to the class.  While Lead Plaintiff's counsel assured the Court at the hearing for this Motion that viable avenues of litigation success were still available for Plaintiffs' case, she did not specify what those avenues were.  Lead Plaintiff's briefing for this Motion concedes that scienter was an element for which Defendants had a strong defense—it is unclear from Lead Plaintiff's filings what evidence of scienter (if any) it had to support its case among the hundreds of thousands of pages of discovery and deposition transcripts, which included deposition transcripts of Recro's CEO and five Key Opinion Leaders, that Lead Plaintiff alleged would provide critical testimony supporting liability.

### B. Requested Fees Must Be Reduced

For securities class actions, "courts within this Circuit have typically awarded attorneys' fees of 30% to 35% for the recovery, plus expenses." In re Ravisent Tech., Inc. Securities Litig., No. 00-1014, 2005 WL 906361, at * 11 (E.D. Pa. 2005) (Surrick, J.). Nonetheless, the requested attorney's fees of $467,600, the request for reimbursement of expenses equal to $424,488.55. and the request for awards of $7,500 for each of the three individuals that comprise the Lead Plaintiff, together give the Court hesitation given the settlement amount. Careful scrutiny is required so as not to deprive the class of a meaningful share of the settlement amount.

The Pomerantz Firm has requested attorney's fees and expenses which in total amount to 63% of the settlement amount, thus leaving for distribution to the class a mere one-third of the total settlement amount. Sometimes, large settlements compel a fee reduction to prevent an attorney windfall, while small settlements compel a fee increase to reflect the risk-reward of smaller cases. See Erie Cty. Retirees Ass'n v. Cty. Of Erie, 192 F.Supp.2d 369, 381 (W.D. Pa. 2002) (noting this argument).

The circumstances of this case suggest that Plaintiffs' various discovery problems—in large part the extraordinary issue regarding their lying confidential witness—sank the case and significantly influenced Lead Plaintiff's and counsel's incentive to settle for a low amount. Class counsel argued at the hearing that there were further avenues toward success but that the settlement was preferred against the likely extensive discovery necessary to pursue those avenues.

Courts have generally "give[n] credence to the estimation of probability of success proffered by class counsel." Huffman v. Prudential Ins. Co. of Am., No. 10-5135, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (Leeson, J.); but see Chester v. Upland Sch. Dist. v. Pennsylvania, 284 F.R.D. 305, 323-24 (E.D. Pa. 2012) (Baylson, J.) ("[C]ourts should not

substitute the parties' assurances or conclusory statements for its independent analysis of the settlement terms").  Further, the Court is not required to take Lead Plaintiff's representations at face-value.  In this case, Lead Plaintiff and class counsel failed to disclose the lying confidential witness and other various problems in its brief for this Motion for final settlement approval.  Class counsel did not present to the Court details on what these "further avenues for success" were at the hearing or in the briefing—in fact, Lead Plaintiff suggests quite the opposite in its briefing, saying that the litigation can be characterized as coming down to a "battle of the experts," which can hardly be called a bona fide path to success.  See Lead Pl. Brief at 12 (arguing that the case's "crucial elements" would have to be resolved "in large part, through a 'battle of the experts'"); see In re Warner Comms. Security Litig., 735, 744-45 (S.D.N.Y. 1985) (noting that in a battle of the experts "it is virtually impossible to predict with certainty which testimony would be credited").  A better characterization of this securities case would instead be a "roll of the dice".  Lead Plaintiff mentions in its brief that extensive discovery was conducted, which it emphasized in support of its argument as to adequate representation.  See Lead Pl. Brief at 9 ("Discovery in this case was extensive.  Defendants, experts and third parties produced over one hundred thousand pages of documents, and Key Opinion Leaders, a former Recro employee, expert witnesses, and [Lead Plaintiff] were deposed").  The Court infers that Plaintiff had little, if any, evidence of liability, once the confidential witness was of no value.

Also important is the suggestion from a negative lodestar (as is the case here, according to Lead Plaintiff's brief, see Lead Pl. Brief at 25-26) "that counsel has a significant financial incentive to cut its losses and settle the lawsuit[]."  In re Baby Prods. Antitrust Litig., 708 F.3d 163, 180 n.14 (3d Cir. 2013).  In the event of a negative lodestar, courts have a responsibility to ensure that the

interests of the class are being properly protected.  See <u>In re Ins. Brokerage Antitrust Litig.</u>, 579 F.3d 241, 284 (3d Cir. 2009).

The result of the litigation, which for the Defendant and its insurance company may be very favorable, does not permit the Court to give Lead Plaintiff's counsel the full one-third fee that it seeks.  The Third Circuit instructs district courts to consider "the amount of recovery obtained" in appraising the quality of an attorney's performance in a class action, and that this factor "may be the only means by which the quality of an attorney's performance can be judged where a suit is settled before any significant in-court proceedings." <u>Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.</u>, 487 F.2d 161, 168 (3d Cir. 1973).

Under all the circumstances, the Court will award class counsel one-half of the amount requested, to be divided by the Pomerantz and Kaskell firms, based on the amount of work performed.

## C. Expenses

Concerning the out-of-pocket expenses totaled at $424,448.50, of this amount $309,325.90 is designated for expert witnesses who have not yet been paid.  It is customary to allow reasonable reimbursement for expert witnesses in a case of this nature.  <u>Abrams v. Lightolier, Inc.</u>, 50 F.3d 1204, 1224-25 (3d Cir. 1995) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action").  But the Court must take into account fairness to the class.  See <u>In re Domsetic Drywall Antitrust Litig.</u>, MDL No. 2437, 2015 WL 5000954, at *7 (E.D. Pa. Aug. 20, 2015) (Baylson, J.) (reducing reimbursed expert fees by one third in "fair[ness] to the members of the class").

At a certain point in the litigation, the Pomerantz firm realized that the case was not worth anything close to what its experts were estimating, as did the Conductor realize of his Opera described above, and that it was going to "close shop" and seek court approval for the $1.4 million settlement. Courts may, and in some instances are obligated to, award less than the full reimbursement of counsel's expenses, even for expert's fees, which tend to make up the lion's share of any expense total.  This is especially true when an expert's services in a litigation clearly did not benefit the class's result in settlement negotiations, as appears here.  See e.g., Dewey v. Volkswagen of Am., 728 F.Supp.2d 546, 615 (D.N.J. 2010) (Shwartz, M.J.) rev'd on other grounds, Dewey v. Volkswagen Aktiengesellscahft, 681 F.3d 170 (3d. Cir. 2012) (reducing expert fee reimbursement by half; reducing settlement consultant fee reimbursement by two-thirds); In re Baush & Lomb, Inc. Securities Litig., 183 F.R.D. 78, 90 (W.D.N.Y. 1998) (reducing reimbursed expert fees by 30% because "$350,000 in such fees" was not reasonable or necessary for "a case that never even came close to going to trial").

The question is presented to what extent should the expert fees be paid by the class or be paid by the Pomerantz firm.  The Court believes that a portion of expenses should be paid out of the fees awarded to class counsel; to order otherwise would basically mean that the class of shareholders is being further deprived of a sufficient share of the settlement amount.

In these cases, class counsel has significant control and responsibility, to make sure that experts are spending time and billing for their time in a way that is "proportional" to the value of the case.  Who should bear the responsibility for the expert fees? Certainly not the experts because they are retained to prepare certain reports and computations which they did.

Although in hindsight, the experts, in accruing fees of over $300,000, may have spent too much time on this case, hindsight should not control the decision to reach a fair result for all parties

concerned. The Court has reviewed the detailed list of expenses and finds that $40,000.00 of the total amount requested are basically "in-house" expenses that class counsel should bear. These include such items as computer research, database, meals, photocopy charges and travel. Thus, the amount to be deducted for expenses from the settlement amount is $384,449.00. Class counsel shall absorb the remainder.

### D.  Class Representative Awards Will Not be Allowed

Finally, Lead Plaintiff also requests a service award of $7,500 for each of the three individuals who comprise Lead Plaintiff. PSLRA provides courts with discretion to award to class representatives, beyond their per share disbursement from the settlement fund proportional to that received by the other class members, "reasonable costs and expenses"—lost wages may be one example—that "directly relat[e] to the representation of the class." 15 U.S.C. § 78u-4(a)(4). "These awards seek to compensate named plaintiffs for services provided, risks taken, and contributions to the enforcement of laws." Brown v. Rita's Water Ice Franchise Co. LLC, 242 F.Supp.3d 356, 371 (E.D. Pa. 2017) (Savage, J.) (citing Sullivan v. DB Investments, Inc., 667 F.3d 273, 333 n.65 (3d. Cir. 2011)). Courts must carefully review any request for class representative awards that come from the settlement fund. Altnor v. Preferred Freezer Servs., Inc., 197 F.Supp.3d 746, 769-70 (E.D. Pa. 2016) (Robreno, J.).

Lead Plaintiff describes in its brief a number of activities undertaken by the individuals that make up Lead Plaintiff, including consulting with counsel, collecting document for production and monitoring settlement negotiations. At the hearing, class counsel reiterated that these individuals were active in the litigation. Affidavits filed by each of these individuals stated time spent on litigation activities at 17, 30, and 40 hours respectively. These are not huge amounts of time that warrant special compensation. Any Plaintiff who wishes to be involved in litigation must

15

be expected to spend some time assisting counsel in discovery and other preparations, without compensation.

After considering the arguments set forth in the Motion and at the hearing, the Court concludes that no award shall be awarded to the individual members of Recro Investor Group.

## IV.    CONCLUSION

The fact is that class counsel will receive a minimal fee for their substantial work. There are many instances where a law firm that accepts a case on a contingency basis will earn substantially more than the firm's "lodestar", whether as a result of a settlement or after a trial.

Often, courts which must review fee requests will frequently justify fee awards in excess of a lodestar because firms involved in this type of litigation don't always receive remuneration for their work for a particular client or in a particular case.  Judges recognize that in the contingent fee world, success for a client should also bring success for the law firm representing the client.

However, there are exceptions, and this case is one of them. Pomerantz represented the class with skill and tenacity.  Its legal work in this case and others in this Court has been of very high quality.  But this case fits the exception, which is simply that not every case is legally or financially successful, considering the amount of time spent. Some contingent fee cases end with a grant of summary judgment, and others go to trial and result in a defense verdict by a jury— both are examples of results with the plaintiffs' firm not receiving any compensation whatsoever.

In this case, there is a settlement but a very small one, and there is a short fall of probative evidence against Defendants.  The Court has to make a difficult choice how to allocate the settlement funds.

Recently, in a securities fraud case in this Court, the undersigned approved a substantial fee award to the Pomerantz firm.  Now, Pomerantz is requesting a fee that, if granted along with full recovery of its expenses, would result in the class members getting a minimal return.  Even with this Court's reduction of fees and expenses to Pomerantz, the class members will be getting only a very small return—much less than they would have received if the settlement amount would have been closer to the estimated exposure of $34,000,000.00.

O:\CIVIL 18\18-2279 Alberici v RecroPharma\18cv2279 Memorandum for Final Approval of Settlement.docx